**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KEVIN GRANT,**

    **Petitioner,**                               **CASE NO. 2:07-CV-1313**
                                                   **CRIM. NO. 2:04-CR-161**
                                                   **JUDGE FROST**
    **v.**                                           **Magistrate Judge ABEL**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, has filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the instant petition, as amended, Respondent's *Return of Writ*, Petitioner's Reply, and the exhibits of the parties.

Petitioner's request to amend the petition to delete claims that have been resolved by the United States Court of Appeals for the Sixth Circuit, and to clarify his remaining claims, Docs. 121, 124, is **GRANTED.**

Construing Petitioner's June 13, 2011, motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, as a request to amend the petition to include a claim that the District Court improperly calculated Petitioner's prior criminal history score, Petitioner's motion, *see* Doc. 126, is **DENIED**.

On April 15, 2005, Petitioner Kevin Grant pleaded guilty to conspiracy to commit money laundering, operating a continuing criminal enterprise, and possession of a firearm in furtherance of a drug trafficking offense. Grant was sentenced to the mandatory minimum aggregate term of twenty-five years imprisonment. The United States Court of Appeals for the Sixth Circuit affirmed Petitioner's convictions and sentence. In April 2007, the Court reduced Petitioner's sentence

pursuant to the government's motion to sixteen years incarceration. Again, the United States Court of Appeals for the Sixth Circuit affirmed that sentence, and the United States Supreme Court denied Petitioner's petition for a writ of certiorari.

In this federal habeas corpus petition, Petitioner asserts that there was constitutionally insufficient evidence to sustain his conviction on possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c) and on operation of a continuing criminal enterprise in violation of 21 U.S.C. § 848; that the District Court improperly calculated his recommended sentence under the United States Sentencing Guidelines; and that he was denied effective assistance of counsel.

For the reasons that follow, the Magistrate Judge concludes that none of the foregoing claims warrant federal habeas corpus relief and therefore **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> On April 15, 2005, Grant pled guilty to three separate offenses: (1) conspiracy to launder money in violation of 18 U.S.C. § 1956(h); (2) operation of a continuing criminal enterprise in violation of 21 U.S.C. § 848; and (3) possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c).
>
> Following entry of his plea, the Probation Department compiled a Presentence Investigation Report ("PSR"). The PSR assigned Grant a total offense level of 37 and placed him in Criminal History Category V. As a result, the Guidelines called for 324 to 405 months imprisonment. Under the applicable statutes, the minimum sentence that the district court could have imposed is twenty-five years: twenty years for the continuing criminal enterprise count and five years, to be served consecutively, for the firearm violation. *See* 18 U.S.C. §

2

> 924(c)(1)(A)(i), (c)(1)(D)(ii); 21 U.S.C. § 848(a). The money laundering statute has no statutory minimum. *See* 18 U.S.C. § 1956(a).
>
> On October 6, 2005, the district court, following a hearing, sentenced Grant to twenty-five years in prison.

*United States v. Grant*, 214 Fed.Appx. 518, unpublished, 2007 WL 143062, at *1 (6th Cir. Jan. 8, 2007). In his appeal, Petitioner asserted that there was an insufficient factual basis for his guilty plea on possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c), as required under Rule 11(b)(3) of the Federal Rules of Criminal Procedure, that the Court improperly calculated the applicable sentencing range under the United States Sentencing Guidelines, and that he was denied effective assistance of counsel. *See id.* On January 8, 2007, the United States Court of Appeals for the Sixth Circuit affirmed Petitioner's convictions and sentence. *Id.*

> On April 17, 2007, the government filed a Rule 35(b) motion, noting that most of Grant's cooperation, which it described as excellent, had been completed. In addition to the assistance that the government had contemplated at the time of Grant's guilty plea, he had also provided substantial assistance in an unrelated state homicide case by testifying against a defendant who had confessed to Grant in prison. The government requested a 9-year reduction, to 16 years.
>
> In response to the government's Rule 35(b) motion, Grant filed a memorandum that argued for a larger reduction than the government had requested. He gave six reasons for this further departure: (1) he had provided more substantial assistance than had been contemplated by the initial plea deal; (2) his firearm conviction could have been a two-point sentencing enhancement, rather than a separate charge with a five-year mandatory minimum sentence; (3) the scope and breadth of his continuing criminal enterprise was less extensive than most such enterprises; (4) his criminal history category overrepresented his actual criminal history; (5) his money laundering conviction should have been subsumed within his continuing criminal enterprise conviction; and (6) the mother of two of his children had recently died, depriving them of a natural parent while he is incarcerated. In sum, he offered one reason directly related to substantial assistance and five reasons related to the "nature and circumstances of the

3

offense and the history and characteristics of the defendant." *See* 18 U.S.C.§ 3553(a)(1).

At the hearing, the District Court rejected out of hand all but the first of these arguments, saying that it would be improper even to consider them:

> The Court is not here today to talk in terms of resentencing and bringing up issues of the two-point enhancement instead of a five-year consecutive charge. The Court is not here today to determine the scope and breadth of the ... continuing criminal enterprise-that was not as extensive as many [such enterprises] and, therefore, a lesser sentence is warranted. The Court is not here to talk about or listen to whether the defendant's criminal history was overrepresented or whether the money laundering count should be subsumed within the [continuing criminal enterprise] or the defendant's family background, at all.... All I'm going to say is, I am not going to listen to any arguments, now or ever, with regard to sentences that have been agreed upon and which have been imposed.

Transcript of Proceedings at 6-7, *United States v. Grant,* No. CR-2-04-161 (S.D. Ohio April 27, 2007). After the prosecution clarified that Grant had never actually agreed to the 9-year reduction and had always maintained his right to argue for a greater reduction, the court modified its position slightly, but still reiterated its complete rejection of five of Grant's six arguments:

> The issues that you're referring to are guideline issues and Section 3553(a) issues that the Court entertains at the time of sentencing, initially, not at the time of a Rule 35 motion. Now, if you want to argue that your assistance has been over and above what everyone defined as being substantial at the outset, then you can argue that, and that's a relevant argument, and I'm more than willing to listen to that.... But with regard to any guideline argument or any of the other issues that were brought up in the memorandum, I will not listen to.

*Id.* at 10-11.

> After considering Grant's substantial-assistance argument, the District Court granted the government's motion and adopted its recommendation, reducing Grant's sentence to 16 years.

*United States v. Grant*, 567 F.3d 776, 778-79 (6th Cir. 2009)(*rehearing en banc granted, Opinion vacated October 16, 2009)*. Petitioner again filed an appeal. On June 9, 2009, the Sixth Circuit held that a district court could "consider other factors normally required for a just sentence under § 3553(a)," *see id.*, reversing and remanding for further proceedings. However, the Sixth Circuit granted a rehearing *en banc*, and on January 11, 2011, affirmed the judgment of the District Court. *United States v. Grant*, 636 F.3d 803 (6th Cir. 2011). On October 5, 2011, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari*. Doc. 129. On December 1, 2011, the United States Supreme Court denied Petitioner's petition for rehearing. Doc. 132.

Meanwhile, on March 31, 2008, Petitioner filed the instant *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[1] He asserts 1) that there was an insufficient factual basis to support his conviction on possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c) and 2) on continuing criminal enterprise in violation of 21 U.S.C. § 848, 3) that the District Court failed to recognize the correct base level for calculation of his recommended sentence under the United States Sentencing Guidelines, and 4) that he was denied effective assistance of counsel. On March 28, 2011, and April 18, 2011, Petitioner filed a request to amend his § 2255 petition in view of the decision of the United States Court of Appeals for the Sixth Circuit. Petitioner's request to amend his § 2255 petition, Docs. 121, 124, is **GRANTED**.

---

[1] Proceedings in this action were stayed pending resolution of Petitioner's appeal. *See* Doc. 111.

5

Petitioner deletes claim three as the United States Court of Appeals for the Sixth Circuit has resolved this claim. *See* Doc. 121. In his amended habeas corpus petition, Petitioner additionally asserts he was denied effective assistance of counsel because his attorney failed to raise an issue regarding whether his prior conviction on driving without a license is "the 'same or similar'" to the instant offense for purposes of calculating his criminal history score. Petitioner now asserts, in lieu of claim three, that the District Court erred by failing to used the guideline range for continuing criminal enterprise in violation of 21 U.S.C. § 848, rather than money laundering, when determining his recommended sentence under the United States Sentencing Guidelines. *See* Doc. 124.

Respondent has not responded to Petitioner's amended § 2255 petition; however, it is the position of the Respondent that all of the claims filed by Petitioner are without merit.

**CLAIM ONE**

In claim one, Petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction on possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). As noted by Respondent, the United States Court of Appeals for the Sixth Circuit has long held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed during a § 2255 proceeding. *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969)(en banc). A challenge to the sufficiency of the evidence upon which a defendant is convicted is an issue that can only be raised on direct appeal. *See Stephan v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974). Moreover, the United States Court of Appeals for the Sixth Circuit already rejected Petitioner's claim:

> Grant pled guilty to a violation of 18 U.S.C. § 924(c)(1)(A). Specifically, the indictment charged Grant with the possession of a firearm in furtherance of a drug trafficking crime. The relevant portion of § 924(c)(1)(A) defines two separate offenses: the first

criminalizes carrying or using a firearm during and in relation to a drug trafficking offense (the "use/carry" offense), and the second criminalizes possession of a firearm in furtherance of a drug trafficking crime (the "possession" offense). *United States v. Combs*, 369 F.3d 925, 932 (6th Cir.2004). Each crime requires different proof. *Id*. With respect to the possession crime, the government must show that the "firearm was possessed to advance or promote the commission of the underlying [drug trafficking] offense." *Id*. at 933 (quoting *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir.2001)). There must be "a specific nexus between the [possession of] the gun and the crime charged." *Mackey,* 265 F.3d at 462. Thus, the government must have been able to prove three essential elements to establish Grant's guilt under § 924(c)(1)(A): (1) possession of a firearm; (2) commission of a drug trafficking offense; and (3) a specific nexus between that possession and the relevant drug trafficking offense.

There can be little doubt as to the sufficiency of the factual basis for the § 924(c) plea. The government was prepared to present evidence that on August 27, 2004, government agents executed a search warrant on Grant's residence and found a 9 mm pistol and ammunition in a bedroom in which 168.8 grams of heroin were also found. Moreover, through electronic surveillance, the government was able to record a conversation in which Grant referred to his possession of a firearm as a means of providing himself protection while he was engaged in the drug trafficking business.

The factual record before the district court clearly showed that the government was in a position to prove that Grant possessed a firearm with the goal of furthering his drug trafficking business. His statement that the gun was intended to provide protection as he engaged in drug transactions clearly satisfies the nexus requirement established by this circuit for a § 924(c)(1)(A) possession conviction. No further showing need have been made. Accordingly, the district court did not abuse its discretion in finding that there was a sufficient factual basis to support Grant's guilty plea.

Grant argues the record is insufficient to provide the necessary factual basis. The crux of his argument is that mere possession of a firearm is insufficient to support a conviction under § 924(c)(1)(A) and that the government must be able to show that the firearm was used during and in relation to a drug trafficking offense. However, this additional showing is required only to establish a violation of the "use/carry" offense.FN1 Grant pled guilty to the possession crime,

> and his reliance on authority that addresses the use/carry offense is misplaced.
>
> FN1. Grant also relies on the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), for the proposition that something more than possession of a firearm must be shown in order to support a conviction under § 924(c)(1)(A). While this is a correct reading of Bailey, Bailey addresses only the use/carry offense. Congress added the possession offense to § 924(c)(1)(A) in response to Bailey. The nexus requirement identified by this court in Mackey and Combs is the showing required in addition to possession for the possession offense.

*United States v. Grant*, 2007 WL 143062, at *2. The United States Court of Appeals for the Sixth Circuit having ruled, this court need not again consider the issue in habeas corpus. *Oliver v. United States,* 90 F.3d 177, 180 (6th Cir. 1996)(issue presented on direct appeal cannot be relitigated in a § 2255 petition absent intervening change in law).

## CLAIM TWO

In claim two, Petitioner asserts the evidence was constitutionally insufficient to sustain his conviction on operation of a continuing criminal enterprise in violation of 21 U.S.C. § 848. Again, this issue is not properly considered in these proceedings. *See United States v. Osborn*, 415 F.2d at 1024. Moreover, Petitioner failed to raise his claim on direct appeal. Therefore, he must show cause for such failure as well as actual prejudice resulting from the error. *Napier v. United States*, 159 F.3d 956, 961 (6th Cir.1998)(citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Petitioner cannot meet this standard here.

> The elements of a violation of § 848 are: (1) the defendant committed a felony violation of federal narcotics laws; (2) the violation was part of a continuing series of three or more drug offenses committed by the defendant; (3) the defendant committed the series of offenses in concert with five or more persons; (4) the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons; and (5) the defendant obtained substantial income or

8

resources from this series of violations.

*United States v. Smith,* No. 06-1645, 239 Fed.Appx. 157, 160, unpublished, 2007 WL 2258848 (6th Cir. Aug. 7, 2007)(citing *United States v. Burns*, 298 F.3d 523, 535 (6th Cir. 2002).

Detective Kiddis summarized the facts of this case in relevant part as follows:

> In April 2004, investigating agents were contacted by FBI agents in Richmond, Virginia, who were intercepting telephone conversations of a heroin trafficker by the name of Glenn Sweeting through a court-ordered wiretap. Richmond agents had intercepted calls between Sweeting and a Columbus, Ohio telephone subscribed in the name of Lance Robinson. Investigators in Columbus soon learned that "lance Robinson" was an alias name utilized by the defendant, Kevin Grant. In the intercepted calls, Grant and Sweeting discussed their respective heroin trafficking businesses in Columbus and Richmond. They also identified another Columbus associate, Dayrel Billingsley, who had his own heroin distribution network in the Columbus area. Grant and Sweeting discussed several of their sources of supply for heroin in New York – including individuals they referred to as forty, Cribby and Homey.
>
> . . . [I]nvestigators monitored the cellular telephone of Kevin Grant, pursuant to a court-authorized wiretap. In the course of monitoring Grant's cellular telephone, agents learned that Grant was distributing heroin on a daily basis to a number of different heroin users from Columbus and the surrounding area. On the wiretap, agents intercepted conversations in which Grant arranged to meet ten to fifteen street-level customers each day, sometimes twice in one day, to sell them "smalls" and "bigs." A "small", which sold for $20, contained .1 grams of heroin, while a "big", which sold for $75 to $80, contained approximately .3 grams of heroin.
>
> The heroin Grant was distributing came from New York City. During the wiretap, Grant made several trips to New York to obtain heroin, through one of his sources, Arie Colbert, aka Forty, and from Hispanic suppliers, including Cribby. The wiretap and cooperating witnesses have revealed that Grant would bring back at least 100 grams of heroin at a time for distribution.
>
> In addition to these street-level customers, Grant was fronting larger quantities of heroin to mid-level distributors, who would sell the heroin and pay him from their p rofits. Robert Slade, Gerald Miller,

Dennis Sumlin and Rochelle Sparks were four of the individuals to whom Grant fronted heroin on a regular basis for further distribution. Slade, Sumlin, Sparks and Miller were fronted anywhere from ten to fifty grams of heroin at a time for distribution.

When Grant would be out-of-town, traveling to New York to obtain more heroin for distribution, he employed others to make deliveries of heroin to his customers. Tia Holley, Grant's girlfriend, Dennis Sumlin and John Fleming assisted Grant in delivering the smaller quantities of heroin to the street-level customers. Conversations were intercepted over the wiretap in which Grant directed Holley, Sumlin and Felming to make deliveries of heroin to his customers when he was unavailable.

Tameka Hairston, the mother of one of Grant's children, allowed Grant to utilize her residence at 6869 Cooper Road to store both heroin and money. When Grant would travel to New York, Grant employed Hairston to deliver heroin to Grant's mid-level distributors – Sparks, Miller, Sumlin and Slade. These deliveries were corroborated by both the wiretap and surveillance.

In August of 2004, Grant obtained a device, which he referred to as a press, from the girlfriend of Glenn Sweeting in Richmond, Virginia. Sweeting was killed in May of 2004 when agents attempted to arrest him as part of their investigation. The press obtained from Sweeting's girlfriend was to be used in Grant's heroin business to allow Grant to press the heroin into the shape of "fingers" (aproximately ten grams at a time) after it was diluted with cut, to make the customers believe it was coming directly from the supplier. Fleming assisted Grant in setting up this press at the residence he shared with Tia Holley, 2992 Remington Ridge.

On August 27, 2004, when agents executed a search warrant on the residence of Grant and Tia Holley at 2992 Remington Ridge, agents found the press as well as 168.8 grams of heroin at the residence. They also found an Intratec, Model AG-10, 9mm Luger pistol, serial number A)49847, with the ammuniction, in the bedroom where the heroin was found. In conversations intercepted over the wiretap between Grant and Sweeting, Grant referred to having a firearm for his protection in his drug trafficking business.

Investigating agents have documented that Kevin Grant obtained a substantial amount of cash from the sale of heroin from May of 2003 until his arrest in August of 2004. Numerous coversations were

> intercepted between Grant and his associate, Dayrel Billingsley, about their respective heroin businesses, the monies earned and how to invest them to make them appear they were derived from legitimate sources of income.
>
> Grant utilized tia Holley and Tameka Hairston to assist him in concealing the proceeds he derived from the sale of heroin. Holley and Hairston assisted Grant in laundering his drug proceeds by (a) collecting money from customers who purchased heroin from Kevin Grant; (b) causing false documentation to be made to make it appear as though Grant had legitimate sources of income to purchase assets; (c) storing cash at Hairston's residence; and (d) depositing cash in bank accounts in Holley's name; and (e) wiring money to New York.
>
> As examples of these money laundering activities, from May of 2003 through June of 2004, Holley deposited in excess of $80,000 in cash into her bank account, which came from Grant's heroin sales. On May 7, 2004, Tia Holley submitted by fax an application for a loan to Bob-Boyd Lincoln Mercury, Incorporated, which contained false information concerning Grant's sources of income, in order to purchase a 2004 Lincoln Aviator. As another example, on June 3, 2004, at the direction of Kevin Grant, Tameka Hairston wired $2500 in U.S. currency that she had received from Grant, from Columbus, Ohio to an associate of Grant's in New York city.
>
> In conclusion, the evidence developed through the wiretaps, surveillance, undercover purchases, traffic stops, search warrants, financial investigation and information provided by cooperating witnesses establishes that Kevin Grant operated a continuing criminal enterprise from May of 2003 through August of 2004 from which he generated substantial income and resources from the sale of heroin. As a part of this enterprise, Grant supervised at least five people – including Robert Slade, Rochelle Sparks, Gerald Miller, Dennis Sumlin, John Fleming, Tameka Hairston, Tia Holley and Uncle Timmy – who were involved with him in the distribution of heroin, p ossession of heroin for distribution and transporting heroin from New York to Colulmbus for distribution. This evidence further establishes that Grant conspired with other individuals to conceal the monies derived from the sale of heroin and to utilize his drug proceeds to further promote his drug trafficking activites. . . .

*Guilty Plea Transcript,* at 32-37. Petitioner admitted to the truth of these facts. *Id*. at 37-44. Based on the government's statement of facts, with which Petitioner agreed, there was a sufficient basis

for Petitioner's guilty plea on this charge.

Claim two is without merit.

## CLAIM THREE

Petitioner asserts in amended claim three that the District Court improperly used his conviction on operation of a continuing criminal enterprise rather than money laundering to determine his appropriate sentencing guideline range under the United States Sentencing Guidelines, resulting in a higher sentence. *Amended Memorandum*, Doc. 124.

The United States Court of Appeals for the Sixth Circuit rejected this claim on direct appeal:

> Grant next challenges the district court's Guidelines calculations. We need not address this issue because any alleged errors in the Guidelines were harmless as Grant received the minimum sentence authorized by statute. Cf. *United States v. Goliday*, 145 Fed.Appx. 502, 507 (6th Cir.2005) (noting there was no need to remand for a Booker error where the defendant received the minimum statutory sentence); *United States v. Johnson*, 129 Fed.Appx. 966, 972 (6th Cir.2005) (same).

*United States v. Grant,* 2007 WL 143062, at *3. The Sixth Circuit again rejected Petitioner's argument that the District Court incorrectly calculated Petitioner's recommended sentencing guidelines in his Rule 35 appeal:

> [W]e briefly dispose of Grant's argument that his Guidelines range was improperly calculated by the district court at his original sentencing hearing. We recognize that there is uncertainty as to whether it is appropriate to consider the district court's original Guidelines calculation in reviewing an issue arising from a subsequent Rule 35(b) proceeding. *See Dillon*, 130 S.Ct. at 2694. We decline to resolve that issue here because we may quickly conclude that the district court correctly calculated Grant's Guidelines range.
> . . . .
>
> The district court used continuing criminal enterprise as the underlying crime for the money laundering count. Grant argues that the district court instead should have found his trafficking of heroin

> to be the underlying crime for his money laundering count, resulting in an adjusted offense level of 34. Under Grant's scenario, when the counts were grouped, the continuing criminal enterprise count would then have carried the higher offense level, and Grant would have been left with a total offense level of 35, two points lower than the offense level utilized by the district court. Grant claims that this calculation is important because the government's recommended sentence reduction was intended to leave Grant with a sentence half the length of his minimum exposure at sentencing.
>
> Heroin trafficking qualifies as one element of the crime of operation of a continuing criminal enterprise. See 21 U.S.C. § 848(c); *United States v. Long*, 190 F.3d 471, 474–75 (6th Cir.1999). Thus, any trafficking proceeds that Grant laundered or caused Holley and Hairston to launder were also proceeds of the continuing criminal enterprise. Considering the additional fact that Grant did not plead guilty to heroin trafficking, the district court did not err by using the continuing criminal enterprise as the underlying offense of the money laundering count. We find no fault with the district court's choice of the higher offense level for money laundering rather than the offense level for a continuing criminal enterprise.FN11
>
> FN11. Grant's reliance on application note 2 of U.S.S.G. § 3D1.3 (2004) is misplaced because the counts being grouped in this case are distinct crimes with separate Guidelines provisions that "involv[e] substantially the same harm" and "transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.3 (2004).

*United States v. Grant*, 636 F.3d at 818. The United States Court of Appeals for the Sixth Circuit having ruled, this court need not again consider the issue in habeas corpus. *See Oliver v. United States,* 90 F.3d at 180.

Claim three is without merit.

## CLAIM FOUR

In claim four, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed adequately to review with him the *PreSentence Investigation Report* or request a continuance of sentencing to determine "whether [Petitioner] understood what he had plead guilty

13

to and whether he sought to proceed with. . . new counsel." *Petition,* at 11, Doc. 110. Petitioner complains that his attorney failed to argue that his criminal history score over-represented the seriousness of his criminal record based on criminal history points assessed for a misdemeanor offense. He asserts that defense counsel should have advised him against pleading guilty to possession of a firearm in furtherance of a drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c), because the government lacked evidence to establish the charge. Petitioner argues that his properly calculated guideline sentence should have resulted in a base offense level of 35 and a criminal history of IV, corresponding to a recommended guideline range of 235-293 years incarceration. Additionally, in his amended petition, Petitioner, asserts he was denied effective assistance of counsel because his attorney failed to raise an issue regarding use of his prior conviction on driving without a license for purposes of assessing Petitioner's prior criminal history score under the United States Sentencing Guidelines. In his Rule 60(b) motion, Petitioner similarly contends that this prior conviction on driving without a license improperly was used to assess two criminal history points under U.S.S.G. § 4A1.1(d),[2] in view of Amendment 742[3] to the United States

---

[2] U.S.S.G. 4A1.1(d) provided in relevant part:

Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

*U.S.S.G. Guidelines Manual*, Effective November 1, 2004.

[3] Effective November 1, 2010, Amendment 742 amended the sentencing guidelines by striking Section 4A1.1(e) from a criminal defendant's prior criminal history score:

[T]his amendment eliminates the "recency" points provided in subsection (e) of §4A1.1 (Criminal History Category. Under §4A1.1(e), one or two points are added to the criminal history score if the defendant committed the instant offense less than two years after release from imprisonment on sentence counted under

Sentencing Guidelines, effective November 1, 2010. These arguments are not persuasive.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687. Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id* . To establish the second prong of the *Strickland* test, prejudice, a Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it

---

> subsection (a) or (b) or while imprisonment or escape status on such a sentence. . . .
>
> The amendment responds to suggestions that recency points are not necessary to adequately account for criminal history[.]

*Supplement to Appendix C*, November 1, 2010, Amendment 742.

need not consider the other. *Id*. at 697.

Petitioner has failed to meet this standard here. As already discussed, the Sixth Circuit has rejected Petitioner's claim that the prosecution lacked evidence to establish his guilt on possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). *See United States v. Grant*, 2007 WL 143062, at *2. Moreover, and contrary to Petitioner's allegations here, the transcript of Petitioner's sentencing hearing reflects that Petitioner indicated he "completely" reviewed the PreSentence Investigation Report with his attorney. *Sentencing Transcript*, at 2-3.

> COURT: I'm sure you read [the PreSentence Investigation Report].
> In fact, I know you've been through this more times than most of us here in the courtroom have, Mr. Grant.
>
> DEFENDANT: Yes, sir. Yes., sir. Yes, sir.

*Sentencing Transcript*, at 8. Petitioner indicated he understood that his convictions carried a mandatory minimum aggregate term of twenty-five years incarceration, and that the District Court had no authority to give him any lower sentence without the filing of a motion by the government. *Id*. at 8, 12. The District Court reviewed the calculation of Petitioner's recommended guideline sentence. *Id*. at 3-6. Although defense counsel did not raise an issue regarding the two criminal history points assessed based on Petitioner's prior convictions in the Portage County Municipal Court on driving without a license, furnishing false information and resisting arrest, *see PreSentence Investigation Report,* ¶¶ 122-23, Petitioner raised the issue himself, arguing that he improperly was assessed two criminal history points under U.S.S.G. § 4A1.1(d)[4] for committing the offense while

---

[4] U.S.S.G. 4A1.1(d) provided:

Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

16

under a prior criminal justice sentence, as he was not under probation on the Portage County conviction at the time of he committed the offense at issue, but was given a suspended sentence with a condition he not have any further offenses. *Sentencing Transcript,* at 6. Petitioner, however, subsequently agreed with the Court's resolution of the matter.[5]

Additionally, Amendment 742, effective November 1, 2010, has no applicability to the

---

[5]

> DEFENDANT: I got two points for being on probation and being released from jail from the Pennsylvania situation. . . . but I was given an additional point for the Portage county situation.
>
> COURT: Well, you were actually given two additional points for the Portage county matter.
>
> DEFENDANT: I didn't see that.
>
> COURT: You were given, actually, two additional points, but then you were given another point because – you normally get two points if you committed the crime within two years after release from imprisonment, but, because you got two points up here for the Ravenna Municipal court matter, you only get one point, down here, for that. So it kind of evens itself out, to be honest with you. Do you understand what I'm saying?
>
> DEFENDANT: Yeah, I understand what you're saying. I think I did read that.
>
> COURT: I'm sure you read it. In fact, I know you've been through this more times than most of us here in the courtroom have, Mr. Grant.
>
> DEFENDANT: Yes, sir. Yes, sir. Yes, sir.
>
> COURT: Well, I see what you're saying. However, I do believe that you fall, and the Court finds that you fall, within the two-point category as a result of your sentence in the Portage county Municipal Court as outlined in Paragraph 122 of the pre-sentence investigation report.

*Sentencing Transcript,* at 7-8.

calculation of Petitioner's October 6, 2005, sentence. *See Smith v. United States,* No. 4:08-CR-273, 2011 WL 1357482, at *5 (N.D. Ohio April 11, 2011)(2010 amendments not retroactively applicable to sentence imposed in 2009). Moreover, contrary to Petitioner's argument here, Amendment 742 deleted § 4A1.1(e) from calculation of a criminal defendant's prior criminal history score, not § 4A1.1(d). *See United States v. Galaviz*, 645 F.3d 347, 363 (6th Cir. 2011)(noting the same).

Finally, any alleged errors in the District Court's calculation of Petitioner's prior criminal history score are harmless. The Court imposed the mandatory minimum term of incarceration required under Petitioner's offenses of conviction of twenty-five years imprisonment. *See PreSentence Investigation Report*, ¶¶163, 165, 167. On April 27, 2007, the Court reduced that sentence, pursuant to the government's motion, to 16 years imprisonment. Docs. 100, 103. Petitioner thereby has failed to establish the ineffective assistance of counsel.

Claim four is without merit.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request to amend the petition to delete claims that have been resolved by the United States Court of Appeals for the Sixth Circuit, and to clarify his remaining claims, Docs. 121, 124, is **GRANTED.**

Construing Petitioner's June 13, 2011, motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, as a request to amend the petition to include a claim that the District Court improperly calculated Petitioner's prior criminal history score, Petitioner's motion, *see* Doc. 126, is **DENIED**.

**PROCEDURE ON OBJECTIONS**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14)

days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/ Mark R. Abel  
United States Magistrate Judge
